# EXHIBIT 9

**Arent Fox**

Arent Fox LLP / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

January 7, 2020

**Russell P. McRory**
212.484.3942 DIRECT
212.484.3990 FAX
russell.mcrory@arentfox.com

VIA FEDEX

Mr. Scott Cohen
Director
FCA US LLC
Northeast Business Center
108 Route 303
Tappan, New York 10983

Re:   Notice of FCA US LLC's Breach of Contract and Violation of the New York Franchised Motor Vehicle Dealer Act

Dear Mr. Cohen:

This firm represents Metro Chrysler Plymouth, Inc. d/b/a Star Chrysler Jeep Dodge Ram Fiat ("Star"). I write in response to FCA US LLC's letters to Star dated July 15, 2019 (the "July Letter") and October 15, 2019 (the "October Letter") in which FCA alleges various defaults by Star under its Dealer Agreements. I also write to formally declare FCA in material breach of the Dealer Agreements. The bottom line is that FCA's threatened termination of Star's Dealer Agreements is unlawful. Accordingly, we demand that FCA immediately withdraws the July Letter and October Letter, ceases any further attempts to terminate the Dealer Agreements, and cures its material breaches of the Dealer Agreements.

FCA contends that Star has breached the Dealer Agreements by: 1) not achieving 100% MSR; 2) not achieving CSI equal to national averages; and 3) having net working capital below FCA's guidelines. Section 463(2)(d)(1) of New York's Franchised Motor Vehicle Dealer Act prohibits FCA from terminating Star's franchises without "due cause." The Dealer Act prohibits FCA from using "unreasonable, arbitrary, and unfair sales or other performance standards in determining a franchised motor vehicle dealer's compliance with a franchise agreement." Veh. & Traf. L. § 463(2)(gg). The Dealer Act also requires that FCA's CSI requirement be fair and equitable. *Id.* at § 463(2)(v). Additionally, FCA's working capital standard is unreasonable and any shortfall has been caused by FCA's unlawful business practices. Therefore Star has not breached the Dealer Agreements.

First, as you are undoubtedly aware, MSR has been declared unlawful in New York. The New York Department of Motor Vehicles recently ruled that MSR violates Section 463(2)(gg) of the Dealer Act because it is unreasonable, unfair and arbitrary. *In the Matter of Alfredo's Foreign*

**Arent Fox**

Mr. Scott Cohen
January 7, 2020
Page 2

*Cars, Inc. d/b/a Larchmont Chrysler Jeep Dodge v. FCA US LLC*, Case No.: FMD 2019-01 (Dept. of Motor Vehicles Nov. 29, 2019). The *Larchmont* decision found that MSR fails to take into account local market conditions such as demographics and socioeconomic factors. Most importantly, MSR also fails to adjust for the impact brokering has on sales in the market. The evidence in the *Larchmont* case showed that not only does FCA act in bad faith by encouraging its dealers to sell vehicles through brokers, but that it actively facilitates such activity by providing secret incentives to certain dealers so they can profitably sell vehicles through brokers. These incentives aren't made available to Star leaving Star at a competitive disadvantage versus FCA's favored dealers. This form of two-tiered pricing violates Section 463(2)(g) of the Dealer Act and the express and implied covenants in the Dealer Agreements requiring FCA to act in good faith.

Second, FCA's customer satisfaction requirement is an unfair and inequitable standard under Section 463(2)(v). FCA's customer satisfaction requirement is average-based, and like MSR, by definition half of the dealer network is in default of their dealer agreements at any given time. Any performance standard that renders half of its dealers in default is facially unreasonable. In fact, FCA's customer satisfaction requirement is worse insomuch as it is based on a *national* average. Under a national average, more than half of New York dealers could be under threat of default simply if average customer satisfaction scores are lower in New York than elsewhere. Notwithstanding the foregoing, Star provides outstanding service to its customers as evidenced by its longevity in the market and its scores over the past several months. While it is true that its CPS Service Advocacy scores were below FCA's unreasonable performance standard in the July Letter, nothing therein establishes whether the difference is material. All FCA has done is compare one number to another and claim that any difference between the two is a dealer performance issue and grounds for termination. This is unreasonable and unfair. Nevertheless, Star's scores have trended upward since January 2019, with scores increasing an impressive 10 percentage points in March 2019. It's CPS Sales Advocacy scores have been above or near FCA's unreasonable performance standard since September 2018. Notably, FCA's October Letter failed to provide any data backing up its continued assertions concerning Star's CSI scores. Because FCA's CSI standard is not fair or equitable to Star, it cannot serve as grounds to terminate Star's franchises.

Third, FCA alleges that Star has not fulfilled its working capital guidelines in violation of the Dealer Agreements. Holding Star accountable for achieving these unreasonable guidelines while FCA is actively sabotaging its business through brokering and illegal incentive programs is unreasonable and violates the covenant of good faith and fair dealings and FCA's statutory duty to act in good faith. Setting that aside, Star's working capital is more than enough to operate its business without concerns. Indeed, besides stating the obvious (that Star's actual working capital is below FCA's unreasonable standard), FCA has not shown that this difference has a negative impact on Star's ability to sell and service vehicles. To the contrary, other than a nebulous

# Arent Fox

Mr. Scott Cohen
January 7, 2020
Page 3

concern that Star is not "adequately capitalized to meet the sales opportunities available to it," FCA has not identified a single operational concern tied to the purported shortfall in working capital. FCA cannot identify any operational concerns because none exist. Accordingly, requiring Star to comply with the unreasonable working capital guideline is unlawful.

Lastly, as stated above, FCA's offering of secret incentive and price discounts to brokering dealers violates Section 463(2)(g) of the Dealer Act. And FCA's active encouragement and facilitation of brokering activities that violate New York law breach FCA's contractual and statutory duties to act in good faith. Moreover, FCA's VGP program also violates Section 463(2)(g) more generally by tying VGP objectives to meeting sales objectives tied to MSR. As you know, FCA lowers VGP objectives for dealers that exceed sales objectives and raise VGP objectives for dealers that do not meet sales objectives. In doing so, FCA discriminates against dealers like Star who are negatively impacted by brokering and have MSR scores below 100%. Because MSR is itself unlawful, incentives impacted by MSR are not available to Star on a proportionally equal basis and violate Section 463(2)(g).

In summary, FCA lacks due cause to terminate Star's franchises because its performance standards are unlawful in New York. Moreover, FCA's violations of the Dealer Act and its failure to act in good faith in breach of the Dealer Agreements have injured Star and impaired its ability to compete with other FCA dealers in the area. Accordingly, we hereby demand that FCA withdraws the July Letter and October Letter and ceases any efforts to terminate Star's franchises. Moreover we demand that FCA adjusts Star's CSI, MSR and net working capital guidelines downward to reasonably reflect Star's performance and that FCA pays Star all incentive monies under VGP it did not earn and all incentives it secretly paid to Star's competitors. Star intends to vigorously enforce its rights under the Dealer Act and the Dealer Agreements should FCA refuse to do so.

Sincerely,

Russell P. McRory

cc: Wendy S. Mirkin-Fox, Esq. (via email)